[No. A036327. First Dist., Div. Two. Jan. 29, 1988.]

LORI DOYLE et al., Plaintiffs and Respondents, v.
BOARD OF SUPERVISORS OF CONTRA COSTA COUNTY et
al., Defendants and Appellants.

[No. A037490. First Dist., Div. Two. Jan. 29, 1988.]

LORI DOYLE et al., Plaintiffs and Appellants, v.
BOARD OF SUPERVISORS OF CONTRA COSTA COUNTY et
al., Defendants and Respondents.

## COUNSEL

Carmen A. Estrada, Richard A. Rothschild, Mary S. Burdick, Rudolfo C. Aros, Mark Goldowitz, Philip Bertenthal, Steven R. Berg and Grace A. Galligher for Plaintiffs and Respondents and Plaintiffs and Appellants.

John Huerta, Gronemeir, Barber & Huerta, Abby Leibman and Heidi Strassburger as Amici Curiae on behalf of Plaintiffs and Respondents in No. A036327.

Victor J. Westman, County Counsel, Arthur W. Walenta, Assistant County Counsel, John K. Van de Kamp, Attorney General, and Stephanie Wald, Deputy Attorney General, for Defendants and Appellants and Defendants and Respondents.

Donna Shannon Scott as Amicus Curiae on behalf of Defendants and Appellants in No. A036327.

## OPINION

**BENSON, J.**—These consolidated appeals raise the questions of whether section 15031[1] of the California Unemployment Insurance Code is preempted by provisions of the federal Job Training Partnership Act (JTPA or the act) and whether defendants who are successfully sued for violating a statute may immunize themselves from liability for attorneys' fees under Code of Civil Procedure section 1021.5 by filing a disclaimer of interest in the litigation while at the same time continuing the statutory violation which triggered the litigation. We find section 15031 is preempted by the act and we dismiss the appeal concerning attorneys' fees as moot.

---

[1] Unless otherwise indicated, all statutory references are to the California Unemployment Insurance Code.

Plaintiffs Lori Doyle and Judy Bakanec, Contra Costa County residents eligible for job training services, filed this action seeking injunctive and declaratory relief and peremptory writs of mandate. They sought to compel enforcement of section 15031. That section requires Private Industry Councils (PIC's) organized under JTPA to include in their membership a representative of a child resource and referral agency and a public assistance recipient who has recently completed or is receiving job training under JTPA. Neither of these categories of membership is required by the federal law.

Plaintiffs sought a writ of mandate to compel implementation of section 15031 by two groups of defendants. The first group consisted of the Board of Supervisors of Contra Costa County, its members, and the PIC of Contra Costa County and its director, Arthur Miner, (county defendants). The second group was composed of the State Job Training Coordinating Council, its individual members, and the Employment Development Department and its director, Kaye Kiddoo, (state defendants).

The state defendants filed opposition to the petition arguing that section 15031 is preempted by federal law. The county defendants filed an answer by way of disclaimer asserting that these defendants have no interest in the subject matter of the action.

The trial court decided in favor of plaintiffs and ordered that two peremptory writs of mandate issue. These orders provided that the state and county defendants were required to comply with the provisions of section 15031 "which requires that Private Industry Councils shall include representatives of two community based organizations, including those serving minority populations, child care resource and referral agencies, and a public assistance recipient." The state defendants filed a notice of appeal from both peremptory writs. The county defendants also filed a notice of appeal in which they again disclaimed any interest in the action and asserted that the appeal was taken solely for the purpose of insuring uniformity of decision.

In 1982, Congress enacted the JTPA which took effect October 1, 1983. The central purpose of JTPA was "to establish programs to prepare youth and unskilled adults for entry into the labor force and to afford job training to those economically disadvantaged individuals . . . facing serious barriers to employment." (29 U.S.C. § 1501.) This act replaces the Comprehensive Employment Training Act (CETA), 29 United States Code sections 801-999, and demonstrates the intention of Congress to encourage greater private sector participation in job training programs.

The training program is administered at the local level by PIC's whose members are drawn from private industry, educational agencies, organized

labor and community organizations. Each PIC oversees activities in a given "service delivery area." Federal funds are allocated to "service delivery areas," the basic unit of the program. (29 U.S.C. § 1511.) For each service delivery area there is a PIC. PIC's are responsible for developing a job training plan and insuring that it is implemented. (29 U.S.C. § 1513 (a), (b).) Overall direction of the program is vested in the state.[2] The job training program under JTPA is wholly funded by the federal government in the amount of approximately $200 million per year.

An extended role for the private sector was one of the fundamental principles underlying the new job training legislation. The increased involvement of the private sector was accomplished through the membership requirements for the PIC's. The act provides that a majority of the members of a PIC must be from the private business sector. This composition of the PIC's and the selection of its members is specifically and comprehensively provided for in the act. (29 U.S.C. § 1512, see Appendix A.)

Also in 1982, the California Legislature enacted the Family Economic Security Act (FESA). (§ 15000 et seq.) Section 15031 of FESA also governs PIC membership. (See Appendix B.) Section 15031 (a)(1) and (a)(2), requires that PIC's include all members required by the federal JTPA law plus representatives from "child care resource and referral agencies, and a public assistance recipient who is currently enrolled in, or has recently completed training in, programs funded under this division." The California statute thus requires the mandatory membership of all members, public and private, required by the federal statute and in addition some public members not required by the federal law.

■ Plaintiffs contend that the state and county defendants must add the additional members required by state law to the PIC's. Defendants have refused to enforce and comply with the state law. State defendants argue that the trial court erred in ordering them to comply with the provisions of section 15031 since under the supremacy clause (U.S. Const., art. VI, cl. 2.) state laws that interfere with or are contrary to federal law are invalid. State defendants claim: (1) that compliance with both the state and federal statutes is physically impossible; (2) that under the wording of the federal law, PIC membership cannot be expanded; and (3) that Congress evidenced a clear intent to exclude the client population from membership in PIC which the state law would require to be added.

Plaintiffs assert (1) that the federal membership requirements are minimum requirements and that the state is free to supplement membership

---

[2] The Employment Development Department (EDD) has been designated as the agency to administer JTPA in California under section 15050.

with public members so long as no conflict occurs; (2) that it is not physically impossible to comply with both state and federal law; and (3) that the state law does not stand as an obstacle to the accomplisbment and execution of the full purposes and objectives of Congress.

■ "In determining whether a state statute is pre-empted by federal law and therefore invalid under the Supremacy Clause of the Constitution, our sole task is to ascertain the intent of Congress. Federal law may supersede state law in several different ways. First, when acting within constitutional limits, Congress is empowered to pre-empt state law by so stating in express terms. Second, congressional intent to pre-empt state law in a particular area may be inferred where the scheme of federal regulation is sufficiently comprehensive to make reasonable the inference that Congress 'left no room' for supplementary state regulation. . . . [¶] As a third alternative, in those areas where Congress has not completely displaced state regulation, federal law may nonetheless pre-empt state law to the extent it actually conflicts with federal law. Such a conflict occurs either because 'compliance with both federal and state regulations is a physical impossibility,' or because the state law stands 'as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' Nevertheless, pre-emption is not to be lightly presumed." (*California Federal Sav. and Loan Ass'n.* v. *Guerra* (1987) 479 U.S. 272, 281 [93 L.Ed.2d 613, 623, 107 S.Ct. 683, 689]; citations omitted.)

■ JTPA does not expressly state that it preempts state law. Section 126 of this act (29 U.S.C. § 1536) provides that state legislatures may enact provisions consistent with the provisions of federal law.[3]

Here, we have the same type of preemption language presented to the court in *California Federal Sav. and Loan Ass'n* v. *Guerra, supra,* 479 U.S. at p. 282, [93 L.Ed.2d at p. 624, 107 S.Ct. at page 690], which preempts only inconsistent state law. To determine whether California's law adding categories of membership to the PIC's is inconsistent with the federal law we must decide whether federal law merely identifies a minimum number of membership categories who must be on PIC's, thus leaving the states free to add to that minimum or whether the federal law establishes the complete category membership of PIC's and any addition to that list would violate federal law. ■ To make this determination we must look to the language of federal law "against the background of its legislative history and historical context." (*Id.* at p. 1310 [93 L.Ed.2d at p. 691, 107 S.Ct. at p. 691].)

---

[3] "Nothing in this chapter shall be interpreted to preclude the enactment of State legislation providing for the implementation, consistent with the provisions of this chapter, of the programs assisted under this chapter."

██ Section 102 of JTPA (29 U.S.C. § 1512) provides that each PIC *"shall consist of"* representatives from seven specifically enumerated entities. ██ Black's Law Dictionary (4th ed. 1971) at page 381 defines the word "consist" as "to stand together, to be composed of or made up of. See consisting." "Consisting" is defined as "being composed of or made up of. This word is not synonymous with 'including'; for the latter, when used in connection with a number of specified objects, always implies that there may be others which are not mentioned." (See *Paramount Gen. Hosp. Co.* v. *National Medical Enterprises, Inc.* (1974) 42 Cal.App.3d 496, 501 [117 Cal.Rptr. 42].) ██ Moreover, the word "shall" in a statute imports that its provisions are mandatory, as long as that meaning is in accord with the legislative intent. (*Francis* v. *Superior Court* (1935) 3 Cal.2d 19, 29 [43 P.2d 300].) ██ The strong language used in the section suggests that Congress intended to leave no room for additional PIC membership. Section 1512 of JTPA covers fully the creation and composition of PIC's. Every procedure for creating and maintaining a PIC is set forth in a carefully planned manner. The comprehensiveness of the statute strongly suggests there is no room for expansion of PIC membership by a state.

The legislative history of JTPA supports an interpretation of the section which allows for no additional members. The legislation was based on four basic principles. "First, the new legislation must provide for the involvement of the private sector in the design and administration of training programs. Under the current CETA system, business involvement has been limited to Title VII programs, and there is no requirement for the involvement of the private sector in all aspects of the program. Such involvement is essential because it is the private sector which will employ the graduates of the training programs and it is only those who will employ the graduates who can really define the kinds of training programs that are needed." (Sen.Rep. No. 97-469, 2d Sess., pp. 1-2, *reprinted* in 1982 U.S. Code Cong. & Admin. News, No. 3, at pp. 2636-2637.) The three other principles of the legislation contained in the legislative history are the following: (1) a recognition of the role of the state as opposed to excessive involvement of the federal government; (2) a job training program that must truly be a program to train and not an income maintenance program; and (3) a provision in the legislation for an effective means of measuring program results. (*Ibid.*) The legislative history makes clear that the PIC is the decisionmaking body for planning, administration and basic structure of the job training program in the service delivery areas. (1982 U.S. Code Cong. & Admin. News, *supra,* at p. 2648.)

The legislative history contains no suggestion that a state legislature may add to the PIC membership. "As the first need for this program is to strengthen *private sector involvement,* the composition of the PIC is private

sector oriented. A majority of the members of the council must be representatives of private business, including small business, who have substantial management or policy responsibility. The Chairman of the council must be selected from among the business representatives.

"...............

"The responsibility for the selection of members of the council falls on the shoulders of the chief elected officials of the units of general local government in the service delivery area. Such selection of membership is to be made from lists of nominations offered to the officials by business organizations and other interested organizations in the service delivery area. . . . [¶] The remaining members of the council are to be selected by the chief elected official from lists of nominations received from interested organizations knowledgeable of employment and training issues . . . . [¶] It is the committee's intent that the determination of the size of the council and the selection of the PIC representatives be made expeditiously by the local elected officials. If such actions are not taken in a timely manner, . . . , the Governor is expected to exercise the provisions of this legislation to make such appointments and determine the size of the council. . . . [¶] Once the representation on the PIC is selected, the chief elected official is to submit the list of members with supportive documentation to the Governor. If the Governor determines that the composition and appointments are consistent with the legislative requirements for membership, the governor shall certify the PIC as meeting the requirements of the law. Such decision is to be made within 30 days of the date of submittal of the list." (1982 U.S. Code Cong. & Admin. News, *supra,* at pp. 2648-2650.)

The mandatory language used in the section of the act governing PIC membership, the detailed procedures set forth in the act and the legislative history of the act lead us to conclude that Congress intended to control the members of PIC's to the exclusion of state augmentation.

█ Furthermore, courts will normally assume from enactment of new legislation on the same subject and from repeal of former legislation that the Legislature intended to change existing law. (*Union League Club* v. *Johnson* (1941) 18 Cal.2d 275, 278 [115 P.2d 425].) As we previously stated JTPA replaced CETA. █ Under CETA the predecessors to PIC's, the Manpower Advisory Councils, included the very members sought to be added by the California Legislature. When JTPA was enacted, participation of recipients of program services were notably eliminated from membership on PIC's. We can only conclude that this exclusion was purposeful and in keeping with Congress's intent to include on PIC's only those representatives specifically named in the federal law.

JTPA contains a provision that if a state's statute were to conflict with the federal act, the entire state program could be defunded. (29 U.S.C. § 1574 (b).) To avoid this drastic result, the California Legislature provided for the director of the EDD to seek waivers for any inconsistency between state and federal law. (§§ 15060, 15083.)

The state defendants introduced into evidence a letter from the EDD director to the Department of Labor which sought a waiver to add the members to the PIC's as required by state law. A reply letter from the Department of Labor which denied EDD's request was also introduced. It stated: "As you know, Section 102 of JTPA establishes the requirements for the PIC members. There are no provisions in the Act which permit the Secretary of Labor to waive the membership requirements." After receiving this denial, EDD instructed PIC's and local officials to comply with the federal statute on PIC membership. The state defendants argue that this determination of the Department of Labor that the requirements for PIC membership are established under the federal act and that those requirements cannot be waived is entitled to considerable deference. (*Sudomir* v. *McMahon* (9th Cir. 1985) 767 F.2d 1456, 1459; *Campos* v. *Employment Development Dept.* (1982) 132 Cal.App.3d 961, 967 [183 Cal.Rptr. 637].)

Plaintiffs counter that the letters offered by the state defendants do not support this position. Plaintiffs point out that the letters do not state whether a conflict exists between state and federal law but merely point to the fact that the federal law contains no provision for the granting of waivers. State defendants reply that the clear indication of the language in the letter from the Department of Labor is that the membership requirements as set out in the federal law cannot be varied.

Plaintiffs also provided the court with the results of their survey of 45 PIC's within the state which showed that only 20 PIC's strictly adhered to the federal requirements for PIC membership. They argue that federal and state officials acquiesced in the state's practice of extending PIC membership beyond the categories enumerated in federal statute. They point out that federal funds have not been withheld from the state. State defendants deny that they have acquiesced in any variations of PIC membership. They submitted a declaration of an officer of EDD stating the department consistently monitors PICs' compliance with federal statutes and when it is discovered that a PIC is out of compliance, corrective action is immediately taken. State defendants point out that at any one time membership in PIC's is in flux because vacancies have not been filled and this is the cause of temporary noncompliance.

We find this evidence of the letter from the Department of Labor and the survey of California PIC's to have little persuasive value in assisting this

court in determining the issue before us, that is, the intent of Congress regarding PIC membership.

We hold that 15031 of FESA is preempted by federal law. We do so for several reasons: first, the clear language of the federal act, when measured against the background of its legislative history and historical context, causes us to conclude that Congress intended to leave no room for supplementary state legislation regarding the composition of PIC membership; second, the comprehensive scheme of federal regulation also supports that conclusion; finally, where the Congress has, in specific mandatory language limited membership to specific categories, it is physically impossible to comply with the federal law and concurrently expand upon the membership categories. .

As we have earlier noted, the act permits state legislatures to enact legislation consistent with the federal law. Nevertheless, though Congress has not completely displaced state regulation, any state regulation that actually conflicts with the federal law is preempted. Where the federal law unequivocally states that seven categories of membership shall comprise a PIC, it is physically impossible for a state to require nine categories and still comply with federal law. (*Florida Avocado Growers* v. *Paul* (1963) 373 U.S. 132, 142-143 [10 L.Ed.2d 248, 256-257, 83 S.Ct. 1210].)

The judgment of the trial court for issuance of peremptory writs of mandate is reversed. The matter is remanded to the trial court with directions to discharge the peremptory writs and to enter its judgment denying the petition for writ of mandate. Plaintiffs' appeal from the order of the trial court denying them attorneys' fees from the county defendants (A037490) is dismissed as moot. Appellants in appeal No. A036327 are awarded their costs on appeal.

Rouse, Acting P. J., and Smith, J., concurred.

The petition of plaintiffs and respondents for review by the Supreme Court was denied April 21, 1988.