[No. A089133. First Dist., Div. Five. Nov. 16, 2000.]

VIRGINIA MENGE, Plaintiff and Respondent, v.
SALLY REED, as Director, etc., Defendant and Appellant.

**COUNSEL**

Bill Lockyer, Attorney General, Pamela Smith-Steward, Chief Assistant Attorney General, David S. Chaney, Assistant Attorney General,

Damon M. Connolly and Christine B. Mersten, Deputy Attorneys General, for Defendant and Appellant.

Law Offices of Peter Goodman and Peter Goodman for Plaintiff and Respondent.

**OPINION**

**STEVENS, J.**—The trial court issued a writ of mandate requiring Sally Reed, as Director of the Department of Motor Vehicles (DMV), to set aside the DMV's revocation of a California school bus certificate held by respondent Virginia Menge (Menge). In the DMV's appeal of this ruling, the issue presented is whether a school bus driver, who submitted a purportedly adulterated urine specimen in a random drug test, is entitled to a hearing before the DMV, prior to the revocation of her school bus driver's certificate. We conclude the driver is entitled to a prerevocation hearing, and we affirm the judgment.

## I. FACTS AND PROCEDURAL HISTORY

Menge was a school bus driver employed by the San Ramon Valley Unified School District (District). She was required to possess, and did possess, a California school bus certificate issued by the DMV. (See Veh. Code, § 12517, subd. (a).)[1] Menge was also obligated to comply with the controlled substances and alcohol use and testing requirements set forth in section 382.101 et seq. of title 49 of the Code of Federal Regulations. (Veh. Code, § 34520, subd. (a).) Section 382.211 of title 49 of the Code of Federal Regulations mandates such drivers to submit to random testing for alcohol or controlled substances.

The District subjected Menge to a random drug test, administered by National Medical Review Offices, Inc. (NMRO), on February 18, 1999. It was determined that Menge's urine sample was unsuitable for testing due to the presence of nitrate, an adulterant. When the District learned of the test results, it placed her on administrative leave, with pay, and scheduled a *Skelly* hearing for March 10, 1999.[2] Menge did not attend this hearing, reserving her right to appeal any decision that her employment be terminated.

---

[1] Unless otherwise indicated, all further section references are to the Vehicle Code.

[2] *Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194 [124 Cal.Rptr. 14, 539 P.2d 774] (*Skelly*) requires, before a permanent employee is disciplined, that the employee be given notice of the proposed discipline, the reasons for it, a copy of the charges and material on which they are based, and an opportunity to respond orally or in writing. (*Id.* at p. 215.)

By letter dated March 10, 1999, the District next notified Menge of its intention to recommend that the State Board of Education (Board) terminate her employment as a school bus driver, on the ground that she falsified information, acted dishonestly, and willfully violated the Education Code or Board rules, based on the allegedly adulterated urine sample. The letter, quoting from a ruling of the United States Department of Transportation (DOT), advised that an adulterated specimen constituted a refusal to test, and the donor therefore had no right to test a split specimen or retest the primary specimen. Menge was placed on administrative leave, without pay, pending Board action at its meeting on March 30, 1999, and advised of her right to request a hearing before the Board.

At some point, Menge contacted the District to inquire whether her urine specimen could be retested, and she was told to contact the NMRO. The NMRO advised her that the specimen could not be made available for retesting. The NMRO forwarded a copy of the test result, which read in part: "SPECIMEN ADULTERATED." Menge then elected not to attend the March 30 meeting before the Board, but instead resigned from her employment.

Upon learning of the results of Menge's test report, the DMV, on March 31, issued an order of revocation of Menge's school bus certificate, effective April 15, 1999, on the ground that her adulterated specimen constituted a refusal to test under title 49 of the Code of Federal Regulations. (49 C.F.R. § 382.107 (1999).) The DMV order erroneously cited section 13376, subdivision (b)(1), which pertains to testing positive on a drug or alcohol test. The order also informed Menge she was not entitled to a hearing because the DMV's revocation was mandatory under the Vehicle Code, but she could nevertheless seek court review of the order by filing a petition for a writ of mandate.

Menge filed a petition for writ of administrative mandate in the superior court, seeking to compel the DMV to reinstate her certificate. In its written order, the trial court noted that the DMV was not "remiss" in revoking Menge's certificate, because the DMV was "required to do so by the Legislature of this state." The court nonetheless granted Menge's petition, to the extent of commanding the DMV to set aside its order of revocation. The trial court found that Menge "was deprived of due process: the system of testing and reporting in place here does not allow persons such as [Menge] to challenge the validity of the process by which they are stripped of their professional license." In particular, the court was disturbed by the federal regulation denying Menge access to the split sample, and believed the hearings offered by the District and Board provided no realistic opportunity to challenge the NMRO report.

This appeal followed.

## II. DISCUSSION

The DMV argues: (1) the writ compels the DMV to perform an act that violates federal regulations, section 34520 (which mandates obedience to the Code of Federal Regulations) and public policy; (2) Menge had a meaningful opportunity to challenge the test results; (3) Menge waived her right to assert a due process violation when she elected not to attend the hearings before the District and the Board; and (4) Menge pursued the wrong party, because the DMV does not control the evidence of the adulterated sample and is merely an "innocent bystander."

### A. *Standard of Review*

■ Whether the DMV's administrative procedures comply with due process is a question of law, and we review the trial court's determination of that question de novo. We accept as conclusive the trial court's factual findings if supported by substantial evidence. (*Clark v. City of Hermosa Beach* (1996) 48 Cal.App.4th 1152, 1169 [56 Cal.Rptr.2d 223].)

### B. *Does the Order Compel the DMV to Violate the Law?*

As mentioned *ante,* school bus drivers must comply with the controlled substances and alcohol use and testing requirements of title 49 of the Code of Federal Regulations. (§ 34520, subd. (a).) Those regulations prohibit such drivers from using alcohol and controlled substances while on duty, as well as for certain periods before and after duty. They also require employers to impose on their drivers random testing for alcohol and controlled substances, and require drivers to submit to the testing. (49 C.F.R. §§ 382.201-382.215 (1999).) Under the regulations, "No driver shall refuse to submit to . . . a random alcohol or controlled substances test required under [section] 382.305." (49 C.F.R. § 382.211 (1999).) A driver is deemed to refuse to submit to an alcohol or controlled substances test if she fails to provide an adequate urine sample or "[e]ngages in conduct that clearly obstructs the testing process." (49 C.F.R. § 382.107 (1999).)

Federal regulations relating to the testing of school bus drivers for alcohol and controlled substances "preempt[] any State or local law, rule, regulation, or order to the extent that: [¶] (1) Compliance with both the State or local requirement and this part is not possible; or [¶] (2) Compliance with the State or local requirement is an obstacle to the accomplishment and execution of any requirement in this part." (49 C.F.R. § 382.109 (1999).)

■ The DMV argues that, by requiring the DMV to reinstate Menge's certificate, the trial court's action presents "an obstacle to the accomplishment and execution" of the federal regulations. (49 C.F.R. § 382.109

(1999).) These regulations, however, do not address the process by which the DMV issues or revokes a school bus certificate. Nor do they forbid the DMV from affording a hearing to a driver whose school bus certificate has been revoked. In this regard, the trial court's issuance of the writ does not conflict with federal regulations.

The DMV also takes the position that the action taken by the lower court is contrary to public policy, because of the government's overriding interest in regulating the conduct of its employees and ensuring public safety. The DMV's position, however, presupposes that Menge's urine sample *was* adulterated and the trial court excused Menge from the consequences. The trial court did not condone the adulteration of urine specimens or allow Menge to escape the ramifications of adulterating her sample. Instead, it found fault with the *process* which precluded Menge from contesting the conclusion that her sample was, in fact, adulterated.

For that reason, the DMV's reliance on *Doyle v. Board of Supervisors* (1988) 197 Cal.App.3d 1358 [243 Cal.Rptr. 572], and *Swan v. Civil Service Commission* (1971) 16 Cal.App.3d 710 [94 Cal.Rptr. 236], is misplaced. Neither decision has any bearing upon the issue before us, since the issuance of the writ of mandate does not compel the performance of acts which were unlawful, contrary to public policy, or in conflict with federal law.

## C. *Opportunity to Challenge Determination of Adulterated Test*

In ruling that Menge had no meaningful opportunity to challenge the determination that she adulterated her drug test, the lower court's notice of decision placed considerable reliance upon *Rios v. Cozens* (1972) 7 Cal.3d 792 [103 Cal.Rptr. 299, 499 P.2d 979] (*Rios*).[3] Sections 16000-16553 required any driver who was in an accident involving bodily injury or property damage over $200 to file an accident report. Based on the reports of the involved parties, the DMV would decide whether there was credible evidence of potential culpability on the part of one of the drivers and, if so, it would suspend the license of that driver, without a hearing. Our Supreme Court held that due process required a presuspension hearing—even though the statutes mandated that suspension orders be issued without a hearing—in light of the magnitude of a person's significant interest in retaining his driver's license and use of his vehicle. (*Rios, supra,* 7 Cal.3d at p. 795.)

---

[3]*Rios* was vacated by *Dept. Motor Vehicles of California v. Rios* (1973) 410 U.S. 425 [93 S.Ct. 1019, 35 L.Ed.2d 398], on the ground that the California Supreme Court opinion was unclear whether the issue was decided under the federal Constitution or an independent state ground. On remand, our Supreme Court clarified it was based on both the federal Constitution and on the California Constitution, and reiterated and reinstated its decision in its entirety. (*Rios v. Cozens* (1973) 9 Cal.3d 454 [107 Cal.Rptr. 784, 509 P.2d 696].)

The DMV attempts to distinguish *Rios* from the matter at hand, because in *Rios* the DMV was required to form an opinion on culpability after reviewing reports, while here the DMV simply reads the NMRO report. The DMV contends the instant case is therefore governed instead by *Thomas v. Department of Motor Vehicles* (1970) 3 Cal.3d 335 [90 Cal.Rptr. 586, 475 P.2d 858] (*Thomas*), in which our Supreme Court held that the DMV could revoke a driver's license based on an abstract of judgment showing prior DUI convictions, without permitting the driver to challenge the validity of the convictions before the DMV. (See also *Larsen v. Department of Motor Vehicles* (1995) 12 Cal.4th 278 [48 Cal.Rptr.2d 151, 906 P.2d 1306].)

In the matter we review, the DMV's role falls somewhere between the quasi-adjudicatory function in *Rios* (warranting a hearing) and the administrative reliance on an abstract of judgment in *Thomas* (not warranting a hearing). For several reasons, we view its role as more analogous to the function in *Rios*. First, although the DMV "shall" revoke the certificate under section 13370, subdivision (a)(3) if the holder "failed to meet prescribed testing or training requirements," the DMV must *first* make a factual determination whether the licensee actually failed to meet those testing requirements.[4] As applicable here, the DMV must decide whether the driver in fact adulterated the specimen. (49 C.F.R. § 382.107 (1999).) Its duty is not, therefore, entirely mandatory in nature.

Second, the abstract of judgment in *Thomas* recorded the outcome of a criminal proceeding, in which the defendant had an opportunity to be heard and to contest the charges before judgment was entered. By contrast, the NMRO report is merely a test result recorded at a laboratory on behalf of a state agency.

Third, the licensee in *Thomas* had the further opportunity to challenge the convictions, after they were entered, before the court in which they arose. Menge, on the other hand, had no such meaningful opportunity to challenge the NMRO report.

---

[4]Section 13370, subdivision (a)(3), applies where a driver has provided an adulterated specimen. The DMV's order of revocation cited section 13376, subdivision (b)(1), but that section applies only where "the certificate holder has received a *positive test result for a controlled substance.*" (Italics added.) The DMV subsequently represented that the applicable statutes were section 13370, subdivision (a)(3) and section 13376, subdivision (a)(4). Section 13376, subdivision (a)(4), does not apply, because it pertains only where the "*applicant* has failed to meet the prescribed testing requirements for issuance of the certificate." (Italics added.) Menge was not an applicant for a certificate. Section 13370, subdivision (a)(3), provides that the DMV "shall deny or revoke a schoolbus . . . driver certificate" if the applicant or certificate holder "[h]as failed to meet prescribed testing or training requirements for certificate issuance." Although Menge contends section 13370, subdivision (a)(3) does not apply to drug tests, but only to the testing of an applicant's skill and physical capacity, we find no basis for such a narrow reading.

The DMV, however, contends Menge was offered the opportunity to challenge the test result in a *Skelly* hearing before the District and again before the Board. In those forums, it is argued, Menge could have challenged the finding that she had adulterated the sample by presenting character evidence or other evidence tending to prove she had not adulterated the sample. The DMV makes no showing, however, that any action which could have been taken at either the *Skelly* or Board hearings would have had any effect on the DMV's decision to revoke Menge's certificate, particularly given the DMV's insistence that revocation is *mandatory* upon receipt of the NMRO report. Unlike the successful attack against the judgment of a criminal conviction, nothing in this record suggests that a successful attack upon the NMRO report before the District or Board would lead to a reversal of the NMRO's findings, since the DMV fails to show that any such action by District or Board would be communicated to the DMV. Nor has it even been shown that a *Skelly* hearing or Board hearing would necessarily occur *before* the DMV took action on the NMRO report. Indeed, at oral argument the Attorney General requested that we urge the Legislature to make binding on the DMV any Board ruling either upholding or overturning the result of such testing. This request leads us to conclude that any finding by the Board that the test result was inaccurate or insufficient would do nothing to spare the school bus driver from the revocation of her certificate. At present, the results of hearings before the District and the Board have no bearing upon the action the DMV believes it must take.[5]

Given Menge's significant interest in being certified to pursue her chosen vocation of school bus driver, due process requires that she be afforded a hearing at which evidence may be presented challenging the test result. In the absence of any hearing before the District or Board that is binding on the DMV, a prerevocation hearing must be provided by the DMV.

D. *Waiver*

The DMV contends that Menge waived her right to assert a due process challenge to the revocation of her certificate because she chose not to attend the hearings before the District and the Board. The issue before the District and the Board, however, involved Menge's employment with a particular school district only. The distinct issue before the DMV was

---

[5]For this reason, we also distinguish two cases the parties did not address. In *Yeoman v. Department of Motor Vehicles* (1969) 273 Cal.App.2d 71 [78 Cal.Rptr. 251] (*Yeoman*), and *Alderette v. Department of Motor Vehicles* (1982) 135 Cal.App.3d 174 [185 Cal.Rptr. 172] (*Alderette*), it was held that a mandatory license revocation was permissible, without a hearing before the DMV, where the driver's culpability had already been determined in a judicial proceeding. (*Yeoman, supra,* at p. 77; *Alderette, supra,* at pp. 180-181.) By contrast, Menge was not adjudicated by any court to have adulterated her specimen.

whether her certificate would be revoked, thus precluding her from driving a school bus anywhere in California. Although Menge voluntarily relinquished her right to challenge the termination of her employment by failing to appear at the Board hearing, it cannot be said she voluntarily relinquished her right to challenge the process by which the DMV would ultimately revoke her certificate.

Of course, a hearing before the Board would have undoubtedly addressed the test result. Nevertheless, Menge's decision not to challenge the test result before the Board could not possibly waive her right to challenge the test result in connection with the revocation of her certificate, since the record does not support a finding that the Board would communicate the results of any such hearing to the DMV.

The cases on which the DMV relies are inapposite. In *Hawthorne Savings & Loan Assn. v. City of Signal Hill* (1993) 19 Cal.App.4th 148, 156, fn. 2 [23 Cal.Rptr.2d 272], the appealing party waived an issue by failing to raise it during the hearing which was the subject of the appeal. Here, on the other hand, Menge brought before the trial court the very issue she now raises on appeal.

*Stenson v. Kerlikowske* (W.D.N.Y., June 10, 1999, No. 98-CV-0316E(H)) 1999 U.S.Dist. Lexis 9288 (*Stenson*), is an opinion designated only for electronic publication, from an out-of-state federal trial court. There, a police officer tested positive for cocaine and was subject to the mandatory termination of his employment. In his exit interview, the officer was given an opportunity to raise " 'any concerns that he might have had' " but declined to do so and instead resigned. The trial court held that the exit interview, together with the availability of a posttermination hearing, provided the officer with a reasonable opportunity to be heard in connection with his *termination*. (U.S.Dist. Lexis 9288, *supra*, at pp. *7-8.) *Stenson* might be germane to our analysis if Menge were challenging the process by which she was terminated from her employment, but it has no applicability to the matter we review. The DMV did not afford Menge anything akin to an exit interview or the opportunity to be heard before or after revoking her certificate.

On the record before us, we conclude that Menge's failure to attend the hearings before the District and the Board did not result in a waiver of the right to challenge the NMRO finding before the DMV.

E. *Materiality of DMV Hearing*

The DMV makes three other arguments to justify its refusal to provide a hearing to school bus drivers whose NMRO reports indicate

adulterated specimens. First, it contends that a hearing is unnecessary because, under the ruling of the DOT, an adulterated specimen constitutes a refusal to test, and the donor is not entitled to a test of the split specimen or a retest of the primary specimen. Therefore, it is argued, even with a hearing the driver would not be able to test the split sample. This is a rather odd argument, given the DMV's discourse on the adequacy of the proceedings before the District and the Board—in which no retesting was available. Although testing of a split sample is not available to a driver under the terms of the DOT ruling, the unavailability of such evidence does not render a hearing inconsequential. As previously mentioned, a hearing on the issue of adulteration may nevertheless be meaningful, since Menge may introduce evidence concerning the chain of custody of the sample, character evidence, or other evidence tending to show she did not adulterate the specimen.[6]

Second, the DMV argues that it does not have possession of the testing evidence or any control over the NMRO. It does, however, have the NMRO test report, and certainly it need not have *control* over the laboratory that published the report to determine if the report is rebutted by the driver's evidence at the hearing.

Finally, the DMV feigns it is being held "responsible" for errors committed by the NMRO and that it is an "innocent bystander." It further claims that the "fundamental problem with [the trial court's] ruling is that it imposes upon the DMV the punishment for a regulation it did not promulgate and did not enforce." The DMV's hypersensitivity reflects a misperception of its role as a public agency. Its concern should not focus upon whether it is an "innocent bystander," but rather upon whether it is, in fact, serving the public in accordance with the fundamental tenets of our Constitution. After all, it was the *DMV* that revoked Menge's license without a hearing, not another agency. Nor does the DMV make any record that it will be unduly burdened by extending a hearing to those in Menge's position, and surely it is neither harmed nor punished by affording due process to California drivers.[7]

---

[6] In their briefs, the parties debate whether split specimen testing may be constitutionally mandated, notwithstanding the DOT ruling. However, this subject was not before the trial court, and we decline to decide the issue on appeal.

[7] The appellant's opening brief requests, in a footnote, that we take judicial notice of certain portions of the 64 Federal Register 69075 et seq. (Dec. 9, 1999), pursuant to Evidence Code sections 452, subdivisions (b) and (c), and 459, subdivision (a). We deny the request, because those portions of the Federal Register are not relevant to the dispositive issues on appeal.

## III. DISPOSITION

The judgment is affirmed.

Jones, P. J., and Rivera, J.,* concurred.

---

*Judge of the Contra Costa Superior Court, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.