Michael CHILDRESS, Appellant,

v.

UNITED STATES, Appellee.

Ezekiel PEEBLES, Jr., Appellant,

v.

UNITED STATES, Appellee.

Alvin L. MARTIN, Appellant,

v.

UNITED STATES, Appellee.

Nos. 10704, 10757 and 11157.

District of Columbia Court of Appeals.

Argued Oct. 13, 1977.

Decided Dec. 15, 1977.

---

David P. Parker, Charlottesville, Va., appointed by this court, for appellant Childress.

Irwin A. Goldberg, Chevy Chase, Md., appointed by this court, for appellant Peebles, adopted the brief of appellant Childress, but did not argue.

Robert H. Haas, Baltimore, Md., appointed by this court, for appellant Martin.

Carol E. Bruce, Asst. U. S. Atty., Washington, D. C., with whom Earl J. Silbert, U. S. Atty., John A. Terry and Charles H. Anderton, Jr., Asst. U. S. Attys., Washington, D. C., were on the brief, for appellee.

Before NEBEKER, YEAGLEY and FERREN, Associate Judges.

YEAGLEY, Associate Judge:

At 11:15 on the morning of November 18, 1975, plainclothes officers Herman J. Keels and T. J. Jones of the Metropolitan Police observed appellants Michael Childress and Alvin Martin acting in what they con-

sidered a suspicious manner, looking into automobiles and apparently casing a bank in the vicinity of the 4500 block of Wisconsin Avenue, N.W. The officers had been assigned to that area because of a high rate of reported burglaries and larcenies from automobiles parked there.

The officers watched as appellants Childress and Martin met appellant Ezekiel Peebles and codefendant Aubrey Martin.[1] After the four men got into the car the officers noted its license number and radioed in for a "tag check." As the officers followed appellants' vehicle in an unmarked car, the police dispatcher responded that there were four traffic warrants outstanding for Childress, the car's owner. The officers lost track of appellants' vehicle in traffic, but relayed the information they had received to similarly assigned plainclothes officers Timothy Leach and Charles Madison.

Shortly after noon, both groups of officers spotted appellants' car as it turned into the campus of Washington Technical Institute in the 4200 block of Connecticut Avenue, N.W. They stopped the car and ordered appellants out. In plain view within the now-unoccupied vehicle police observed a bent coat hanger, screwdriver, wire cutters, and a citizens' band radio and tape player from both of which protruded cut wires.

Police told appellant Childress, the driver, that he was being stopped because of outstanding traffic warrants. In the course of the ensuing conversation, police requested and received appellant Childress' permission to open the trunk, in which they found another citizens' band radio with cut wires, bearing the name and Virginia address of another man. Police arrested appellant Childress on the traffic warrants and appellant Martin after a WALES check revealed an unrelated warrant outstanding for him. Appellant Peebles was allowed to go but was later arrested.

On February 9, 1976, the trial court denied appellants' motions to suppress all evidence seized from the car in the course of appellant Childress' arrest. Eleven days later, a jury found appellants guilty of three counts of petit larceny (D.C.Code 1973, § 22–2202) and one count of destruction of property (D.C.Code 1973, § 22–403).

Appellant Childress was sentenced to concurrent terms of six months on each charge. Appellant Peebles was sentenced to concurrent terms of one year on each charge. Appellant Martin received an indeterminate sentence under the Federal Youth Corrections Act, 18 U.S.C. § 5010(b) (1976). We affirm.

## I.

Appellants first assign error to the trial court's finding that the outstanding traffic warrants justified the stop of appellant Childress' vehicle. Appellants contend, and indeed it is undisputed, that on November 14, 1975, appellant Childress had posted collateral for his outstanding traffic warrants. Appellants argue that as a result the warrants were extinguished and did not exist four days later when appellant Childress' vehicle was stopped. Appellants maintain that appellant Childress' arrest was supported only by the officers' belief that warrants were outstanding for him, was unsupported by independent probable cause, and that all evidence seized thereafter should have been suppressed as the fruit of Childress' illegal arrest.

■ We hold that, under the circumstances here presented, the police officers' good faith reliance on the radio report and the resultant reasonable belief that valid traffic warrants were outstanding provided probable cause to arrest appellant Childress.

This holding is mandated by our decision in *Patterson v. United States*, D.C.App., 301 A.2d 67 (1973), in which we affirmed appellant's conviction and found that his arrest had been based on probable cause despite the police officer's reliance on what turned out to be misinformation. There, the police radio dispatcher incorrectly informed an officer that the car which appellant was driv-

---

1. Codefendant Aubrey Martin did not appeal his conviction.

ing was still listed on the department's "stolen sheet." Appellant was arrested and an incidental search uncovered an unlicensed revolver for the possession of which appellant was convicted. We upheld the trial court's refusal to suppress the weapon.

At the outset, we reject appellant's contention that there was no probable cause for his arrest. Although the stolen car bearing the dealer tags in question had been recovered earlier on the day of appellant's arrest, and for some unexplained reason, the police records did not accurately reflect that fact, this does not mean that the officer's action, in reliance on these records, was unreasonable. . .

Officer Nern was mistaken in his belief that appellant was driving a stolen car. However, at the moment of arrest, he clearly had probable cause to believe a crime had been committed and that appellant was the person who had committed it. [*Id* at 69.]

Appellants direct our attention to *Whitely v. Warden*, 401 U.S. 560, 91 S.Ct. 1031, 28 L.Ed.2d 306 (1971). In that case petitioner had been arrested by an officer who had relied on a police radio bulletin which stated that a warrant existed for petitioner's arrest. After finding that the warrant itself was invalid because it was unsupported by a proper affidavit, the Court reversed petitioner's conviction and rejected the state's argument that the officer's reasonable reliance on the bulletin furnished probable cause and thus legalized the arrest.

*Whitely* does not control the instant case, however, because the warrant there under examination, unlike those at issue here and in *Patterson*, was void *ab initio*.[2] As such, we read *Whitely* to stand for the proposition that the prosecution may not bootstrap itself to a legal arrest and resultant conviction by asserting that police relied reasonably on a warrant that never legally existed. Indeed, we so held in *Sanders v. United States*, D.C.App., 339 A.2d 373, 379 (1975). There, appellant was arrested by District of Columbia police officers acting in reliance on a radio report that an Arlington County, Virginia arrest warrant was outstanding for him. Police learned subsequently that the warrant in question was for another man. We upheld appellant's conviction for the unlicensed carrying of a pistol retrieved from him pursuant to his arrest. We distinguished that situation, in which police relied in good faith on mistaken identity, from *Whitely* in which there was "an infirmity inherent in the foundation of the warrant." *Id.* at 379. In the instant case, there was no such infirmity, and the warrants enjoyed unassailable legal existence, at least until November 14, when appellant Childress posted collateral to satisfy them. Administrative delays attendant to the operation of any metropolitan area police department resulted in failure to remove the satisfied warrants from the computerized "active" list before the officers received the radio dispatch on November 18 that the warrants were outstanding.[3] This combina-

---

**2.** Similar to *Whitely*, and thus distinguishable from the instant case, is *Gilchrist v. United States*, D.C.App., 300 A.2d 453 (1973), in which we held that the trial court had erred in failing to suppress a pistol seized from appellant pursuant to his arrest. There, officers arrested Gilchrist in reliance on a roll call announcement two weeks earlier which had led them to believe, incorrectly, that a warrant existed for appellant's arrest. At trial, the government failed to prove that any such warrant had ever existed.

**3.** Justifiable administrative delay distinguishes this case from *United States v. Mackey*, 387 F.Supp. 1121 (D.Nev.1975). There the District Court suppressed evidence seized from a defendant who had been arrested in Nevada sole-

ly on National Crime Information Center computer information which stated that he was wanted on an arrest warrant in California. In fact, defendant had complied with this warrant five months earlier. The court found

that a computer inaccuracy *of this nature and duration*, even if unintended, amounted to a capricious disregard for the rights of the defendant as a citizen of the United States. . . . Once the warrant was satisfied, *five months* before defendant's arrest, there no longer existed any basis for his detention, and the Government may not now profit by its own lack of responsibility. [*Id.* at 1125 (emphasis added).]

In the instant case, collateral was posted, and the warrants were thus satisfied, on Friday, November 14. Appellant was arrested on the

tion of reasonable administrative delay and reasonable police reliance on misinformation produced by such a delay presents a situation in which acceptance of appellants' position would do nothing to advance the purposes of the exclusionary rule. *See Weeks v. United States*, 232 U.S. 383, 391–93, 34 S.Ct. 341, 58 L.Ed. 652 (1914). There is simply no unlawful or improper police conduct here to deter. Accordingly, we affirm the trial court's determination that probable cause existed to arrest appellant Childress.

We affirm also the trial court's denial of appellants' motions to suppress evidence obtained as a result of appellant Childress' arrest. We uphold the trial court's finding that evidence taken from the passenger area of appellants' automobile was in the officers' plain view after police had legitimately stopped the vehicle.

■ The plain view exception to the search warrant requirement is properly invoked when a police officer has

a prior justification for an intrusion in the course of which he [comes] inadvertently across a piece of evidence incriminating the accused. The doctrine serves to supplement the prior justification— whether it be a warrant for another object, hot pursuit, search incident to a lawful arrest, or some other legitimate reason for being present unconnected with a search directed against the accused—and permits the warrantless seizure. [*Coolidge v. New Hampshire*, 403 U.S. 443, 466 (91 S.Ct. 2022, 29 L.Ed.2d 564) (1971).]

■ In the instant case, appellant Childress' lawful arrest legitimized the officers'

presence at the point of observation and we find that under the circumstances, police had requisite probable cause to seize the items which they observed.[4] *See Coolidge v. New Hampshire*, supra, 403 U.S. at 468, 91 S.Ct. 2022; *Christmas v. United States*, D.C.App., 314 A.2d 473, 476 (1974).

## II.

Appellants contend that, in any event, the trial court erred in finding that appellant Childress had consented to the search of the trunk of his automobile, and in denying suppression of evidence there seized.

■ We are bound to uphold the trial court's finding that a search was consensual unless such a finding is clearly erroneous. *Terrell v. United States*, D.C.App., 361 A.2d 207, 210 (1976); *United States v. Sheard*, 154 U.S.App.D.C. 9, 473 F.2d 139 (1972), cert. denied, 412 U.S. 943, 93 S.Ct. 2784, 37 L.Ed.2d 404 (1973). Reviewing the record in the instant case in light of the totality of circumstances approach to the determination of voluntariness delineated in *Schneckloth v. Bustamonte*, 412 U.S. 218, 93 S.Ct. 2041, 36 L.Ed.2d 854 (1973), we find no basis on which to disturb the trial court's holding. The record reveals that appellant Childress insisted that he had purchased what he possessed, stated that he had nothing to hide, and, consistent with this position, helped the officers open his jammed trunk lock with his own screwdriver. These facts were ample to support the trial court's finding of consent.

## III.

Appellant Martin contends individually that the trial court erred in denying his motion for judgment of acquittal.

---

following Tuesday, November 18. We find that the four-day delay, two days of which were attributable to the weekend, does not rise to the level of police administrative negligence fatal to the government in *Mackey*.

4. The officers involved in the instant case had been assigned to work the casual clothes detail on upper Wisconsin Avenue because of a high rate of larcenies from automobiles parked in that area of items such as those observed in appellants' vehicle in plain view. *See Cooper v. United States*, D.C.App., 368 A.2d 554 (1977). Officer Keels testified that he had ob-

served appellants Martin and Childress looking into automobiles approximately one hour before their car was stopped. When this is coupled with the condition of the property, specifically the protruding cut wires, and its proximity to a screwdriver, wire cutters and a hanger, it was not unreasonable for the officers to believe that the radio and tape player were fruits of crime. We find that the officers had probable cause to seize them. *See Smith v. United States*, D.C.App., 295 A.2d 64 (1972); *Jenkins v. United States*, D.C.App., 284 A.2d 460 (1971).

■ In deciding to submit a case to the jury, the trial judge need only have been satisfied that the government introduced enough evidence so that a reasonable person might find guilt beyond a reasonable doubt. *Curley v. United States*, 81 U.S. App.D.C. 389, 392–93, 160 F.2d 229, 232–33, *cert. denied*, 331 U.S. 837, 67 S.Ct. 1511, 91 L.Ed. 1850 (1947). On appeal, we view the evidence in a light most favorable to the party prevailing below. *Saunders v. United States*, D.C.App., 317 A.2d 867 (1974).

■ In the instant case, appellant Martin was apprehended in an automobile containing three recently stolen items and tools with which a jury could infer the thefts were accomplished. While a mere showing of appellant Martin's presence in the car in the proximity of stolen items would not suffice, *see United States v. Bethea*, 143 U.S.App.D.C. 68, 442 F.2d 790 (1973), here there was also evidence of a common plan and concerted action. A jury could properly draw such an inference from appellant Martin's close relationship with his accomplices, one of whom was his brother and codefendant, Aubrey Martin, and from his conduct in connection with appellant Childress on the morning of their arrest, at which time police had observed both men peering through the windows of parked cars. Indeed, *Bethea* recognized that a different result might have obtained there if the government had shown that appellant "was a close friend of the other occupants or that he had spent a substantial part of the evening with them." *United States v. Bethea, supra* at 71, 442 F.2d at 793.

■ On the facts of the instant case, the trial court properly submitted the question of appellant Martin's culpability to the jury.[5]

The judgments appealed from are hereby

*Affirmed.*

---

**5.** Appellants contend also that the trial court erred in denying their motions to strike the suppression hearing testimony of the sole government witness, Officer Keels, for failure of the government to comply with the Jencks Act. We have reviewed this contention carefully and find it to be without merit. We observe that neither of the forms of which appellants assert they were improperly deprived— the P.D. 255 (arrest form) and the P.D. 47 (rights card)—contained a "statement" as that term is defined by the Jencks Act, *see* 18 U.S.C. § 3500(a) (1970), and that nothing written on either form was related to the subject matter of Officer Keels' testimony, as is required to trigger application of the Act. *See* 18 U.S.C. § 3500(b) (1970).