425 A.2d 813

**COMMONWEALTH of Pennsylvania**

v.

**Joseph RILEY, Appellant.**

Superior Court of Pennsylvania.

Submitted June 13, 1980.

Filed Feb. 13, 1981.

Petition for Allowance of Appeal Denied July 16, 1981.

Elaine DeMasse, Assistant Public Defender, Philadelphia, for appellant.

Eric B. Henson, Assistant District Attorney, Philadelphia, for Commonwealth, appellee.

Before BROSKY, HOFFMAN and CIRILLO,* JJ.

HOFFMAN, Judge:

Appellant contends that: (1) his warrantless arrest lacked probable cause; and (2) pre-trial identifications by two Commonwealth witnesses and two statements by him should have been suppressed because of an unnecessary delay in his arraignment. We disagree and, accordingly, affirm the judgment of sentence.

On November 16, 1976, at about 9:50 a. m., a Philadelphia policeman responding to a disorderly crowd complaint saw appellant shouting and carrying a large radio which he was playing loudly. The officer approached appellant, took him to the patrol car, and requested identification. The officer then checked appellant's name through the National Crime Information Center (NCIC),[1] which reported that appellant was wanted on an outstanding arrest warrant and a juvenile detainer. Relying upon that information, the officer arrested appellant and took him to a nearby police station where the officer again checked the NCIC report, and received the same results.[2] Subsequently, the officer noticed that appellant had picked up a wanted poster bearing artists' sketches of three suspects in the robbery of a bar on October 25, 1976. After appellant stated that he knew two of the suspects, the officer compared the third composite sketch and printed description to appellant. Finding a similarity, the officer arranged to have appellant transported to another police station where detectives were investigating the robbery.

Appellant arrived at the second station at about 1:30 p. m. and was informed that he was a suspect in the robbery. He

* Judge VINCENT A. CIRILLO of the Court of Common Pleas of Montgomery County, Pennsylvania, is sitting by designation.

1. The NCIC maintains a nationwide computer system on stolen property and persons wanted on outstanding warrants.

2. Sometime after the arrest, the police learned that the NCIC computer was incorrect because the outstanding arrest warrant and juvenile detainer had been satisfied four days before the arrest. Appellant was not, in fact, wanted on any active warrants or detainers.

immediately requested a face-to-face confrontation with the witnesses and stated that he did not wish to wait for a line-up. A detective explained the nature of the charges and gave him his *Miranda* warnings at approximately 2:00 p. m. Appellant denied involvement and reiterated his desire for an immediate confrontation. The detective then told appellant that he had a right to a line-up and again reminded him of his right to free counsel. After declining representation and insisting upon a show-up, appellant signed a waiver form at 2:10 p. m. At approximately 3:45 p. m., Jaqueline Hutchins, a bar patron, arrived and identified appellant as one of the robbers. Following that identification, the police took a photograph of appellant. Shortly thereafter, at 4:20 p. m., another detective administered *Miranda* warnings and obtained an unsigned statement from appellant. The questioning ended at 4:45 p. m. At about 5:00 p. m., Theodore Chester, another patron, selected appellant's picture from an array of eight to ten pictures. From 4:45 p. m. to 6:00 p. m., appellant was in a holding area where he ate a meal. Then, after the detectives administered *Miranda* warnings for a third time, appellant gave a statement until 7:00 p. m. That statement, which appellant read aloud and signed, repeated, with only minor variation, the details of the prior unsigned statement. Appellant was arraigned shortly thereafter. At appellant's nonjury trial, the Commonwealth introduced, *inter alia*, the testimony of Ms. Hutchins and Mr. Chester, appellant's statements, and evidence seized from appellant's home pursuant to a search warrant. Appellant was convicted of attempted murder, robbery, criminal conspiracy, simple and aggravated assault, possession of an instrument of crime, and carrying a firearm in public. After the denial of post-verdict motions and imposition of sentence, appellant brought this appeal.

## I.

Appellant contends that his warrantless arrest lacked probable cause. We disagree. "[T]he cases uniformly recognize that NCIC printouts are reliable enough to form the

basis of the reasonable belief which is needed to establish probable cause for arrest." *United States v. McDonald,* 606 F.2d 552, 553 (5th Cir. 1979) (citations omitted). *Accord, United States v. Davis,* 568 F.2d 514 (6th Cir. 1978); *United States v. Williams,* 440 F.2d 1235 (6th Cir. 1971); *United States v. Nolan,* 416 F.2d 588 (10th Cir. 1969); *United States v. Avery,* 418 F.Supp. 263 (W.D.Okl.1976); *Wright v. State,* 343 So.2d 795 (Ala.Cr.App.1977); *People v. Grana,* 185 Colo. 126, 527 P.2d 543 (1974); *Morales v. State,* 513 S.W.2d 869 (Tex.Cr.App.1977); *State v. Glasper,* 84 Wash.2d 17, 523 P.2d 937 (1974). *Cf. Thomas v. State,* 297 So.2d 850, 852 (Fla. App.1974) (because police did not obtain an NCIC "hit," they lacked probable cause to believe that a car was stolen). In an analogous situation, our cases have held that an arresting officer need not have personal knowledge of the facts which support probable cause for arrest and that he may reasonably rely upon a radio transmittal ordering an arrest so long as the officer issuing the order has reasonably trustworthy information sufficient to warrant a man of reasonable caution in believing that the suspect has committed or is committing an offense. *See, e. g., Commonwealth v. Wagner,* 486 Pa. 548, 555, 406 A.2d 1026, 1030 (1979); *Commonwealth v. Kenny,* 449 Pa. 562, 567, 297 A.2d 794, 796 (1972). Thus, we hold that an officer may reasonably rely upon an NCIC report of an outstanding arrest warrant and juvenile detainer in effectuating a warrantless arrest.

 Appellant argues, however, that his arrest was unlawful because it was based upon inaccurate information from the NCIC computer, and that all subsequently acquired evidence was tainted by the illegal arrest. In particular, appellant contends that the NCIC computer failed to show that the arrest warrant and juvenile detainer had been satisfied four days earlier, and that there were no active warrants or detainers to support his arrest. We disagree. Probable cause for a warrantless arrest must be determined on the basis of the knowledge of the arresting officer at the time of arrest. *See, e. g., Commonwealth v. Mackie,* 456 Pa. 372, 375, 320 A.2d 842, 844 (1974). Although the arrest was

indeed made in reliance upon the misinformation from the NCIC, the arresting officer did not know, and could not reasonably be expected to have known, that the information was wrong when he made the arrest. The information, which was subsequently proven wrong, was stale by only four days. Similar contentions were raised in *Childress v. United States*, 381 A.2d 614 (D.C.App.1977), when a warrantless arrest was based on computer-disclosed traffic warrants which, in fact, had been satisfied four days earlier. The court disagreed with the defendant, holding that "the police officers' good faith reliance on the radio report and resultant reasonable belief that valid traffic warrants were outstanding provided probable cause for arrest." *Id.* at 616. The court was unwilling to invalidate the arrest simply because "[a]dministrative delays attendant to the operation of any metropolitan area police department resulted in failure to remove satisfied warrants from the computerized 'active' list before the officers received the radio dispatch . . . that the warrants were outstanding." *Id.* at 617. We agree with the court in *Childress* that police officers' reasonable reliance on computerized information only four days out of date can suffice to justify a warrantless arrest. This Court, in hindsight, will not invalidate an arrest when the arresting officer reasonably relied upon information which he had no reason to believe was incorrect. There is no indication in the record that the Philadelphia police were responsible for the failure of the NCIC to have the updated information. Certainly, police misconduct cannot be inferred when the outstanding arrest warrant and juvenile detainer were satisfied only four days before the NCIC check.[3] *See generally*, Note, *Garbage In, Gospel Out: Es-*

---

**3.** On the present record, we hold that the police conduct was not unreasonable. *Compare Childress v. United States, supra* (arrest valid, four-day-old inaccuracy), *and State v. Cross*, 164 N.J.Super. 368, 372–74, 396 A.2d 604, 606–07 (App.Div.1978) (arrest based on one-month-old stolen car notice not invalid because probable cause must be determined at the time of arrest), *with United States v. Mackey*, 387 F.Supp. 1121, 1125 (D.Nev.1975) (arrest, after NCIC check revealing outstanding warrant, invalid because NCIC information was five months out of date), *and People v. Decuir*, 84 Ill.App.3d

*tablishing Probable Cause Through Computerized Criminal Information Transmittals,* 28 Hastings L.J. 509, 519–27 (1976). Accordingly, we hold that appellant's warrantless arrest was proper.[4]

## II.

Appellant next contends that the pre-trial identifications by two Commonwealth witnesses and his two inculpatory statements should have been suppressed because the delay between his arrest and arraignment violated Pa.R. Crim.P. 130 and *Commonwealth v. Futch,* 447 Pa. 389, 290 A.2d 417 (1972).[5] "In *Commonwealth v. Williams,* 455 Pa. 569, 319 A.2d 419 (1974), this Court established a three-pronged test to determine when evidence has been obtained in violation of *Futch* : (1) the delay must be unnecessary; (2) the evidence must be prejudicial; and (3) the evidence must be reasonably related to the delay." *Commonwealth v. Van Cliff,* 483 Pa. 576, 587, 397 A.2d 1173, 1178, *cert. denied,* 441 U.S. 964, 99 S.Ct. 2412, 60 L.Ed.2d 1070 (1979). Under that test, the time for administrative processing and trans-

531, 533, 39 Ill.Dec. 912, 914, 405 N.E.2d 891, 893 (1980) (arrest, based on NCIC notice, invalid because ten-month-old warrant was quashed sixteen days after issuance). We do not decide whether the length of the delay in updating the NCIC records is sufficient to vitiate a finding of probable cause.

4. Appellant contends also that he was "arrested" on the robbery and related charges while detained at the police station on the warrant violations and that his "arrest" lacked probable cause because it was based solely on appellant's similarity to a composite sketch. This contention is patently frivolous. First, appellant was arrested on the street on the basis of the NCIC information. *See Commonwealth v. Marabel,* 445 Pa. 435, 440, 283 A.2d 285, 287 (1971); *Commonwealth v. Bosurgi,* 411 Pa. 56, 68, 190 A.2d 304, 310 (1963). Moreover, even if the "arrest" occurred at the stationhouse, the officer was entitled to rely upon the comparison of appellant to the composite sketch. *Commonwealth v. Lybrand,* 272 Pa.Super. 475, 481, 416 A.2d 555, 558–59 (1979).

5. Appellant was arrested before May 16, 1977, the effective date of *Commonwealth v. Davenport,* 471 Pa. 278, 370 A.2d 301 (1977), in which our Supreme Court set forth a mandatory six-hour rule superseding *Futch.*

portation of appellant is to be excluded. *Commonwealth v. Terebieniec*, 268 Pa.Super. 511, 520, 408 A.2d 1120, 1124 (1979). Additionally, "[i]n considering the applicability of these conditions to an incriminating statement made in the interim between arrest and arraignment, this Court has narrowed the relevant time frame . . . to the period between the arrest and the making of the statement." *Commonwealth v. Williams*, 484 Pa. 590, 593, 400 A.2d 1258, 1259 (1979) (citing *Commonwealth v. Rowe*, 459 Pa. 163, 327 A.2d 358 (1974)). In the instant case, appellant was arrested at about 9:50 a. m. The next half hour was spent transporting appellant and processing him on the warrant violations. Consequently, that time is excluded. Appellant has failed to show the necessary nexus between the delay and his first incriminatory statement which was given from 4:20 p. m. until 4:45 p. m. Appellant had been given *Miranda* warnings twice before he began that statement. The questioning took only twenty-five minutes. Appellant has presented no evidence that he was, in any way, threatened or coerced. For much of the time after arrest, appellant was alone, awaiting transportation to the second police station or awaiting the arrival of the identifying witness. He was not subjected to constant interrogation. Consequently, we believe that appellant has failed to show that, considering all the circumstances, appellant's unsigned statement was the result of the delay. After giving the unsigned statement, appellant was alone in a holding area where he ate a meal. After receiving *Miranda* warnings again, appellant gave the signed statement which merely reiterated, with minor variances, the unsigned statement which had been properly obtained. Therefore, the signed statement is not subject to suppression. *See Commonwealth v. Van Cliff, supra,* 483 Pa. at 588, 397 A.2d at 1179; *Commonwealth v. Rowe*, 459 Pa. 163, 168–69, 327 A.2d 358, 361 (1974). Moreover, appellant cannot now contend that the identifications were obtained in violation of *Futch* when his insistence upon a one-on-one confrontation occasioned the delay in his arraign-

ment.[6] Accordingly, we hold that no evidence was obtained in violation of appellant's right to prompt arraignment.[7]

Judgment of sentence affirmed.

**6.** Particularly, the delay from 2:10 p. m., when appellant signed the waiver, until 3:45 p. m., when the one-on-one confrontation occurred, is attributable solely to appellant's request for identification by the witnesses of the robbery.

**7.** Appellant raises three other contentions which we note here and reject.

Appellant argues that the lower court should have suppressed the one-on-one identification by Ms. Hutchins because appellant was not represented by counsel at the confrontation. Although one-on-one confrontations have been criticized, *see, e. g., Commonwealth v. Fant*, 480 Pa. 586, 590–91, 391 A.2d 1040, 1042–43 (1978), the lower court did not err in denying appellant's motion to suppress. Appellant requested and then insisted on an immediate one-on-one confrontation. He was aware of the charges made against him, advised of his right to free counsel, and offered an opportunity to participate in a line-up. Nevertheless, he declined representation by counsel and signed a waiver form before the confrontation. Under these circumstances, appellant's contention is meritless. *See Commonwealth v. Jones*, 220 Pa.Super. 214, 217, 283 A.2d 707, 708 (1971).

Appellant next contends that the lower court should have suppressed the identification of his photograph by Mr. Chester because it also was conducted in the absence of counsel. Although appellant had a right to be represented at the post-arrest photographic display, *Commonwealth v. Whiting*, 439 Pa. 205, 209, 266 A.2d 738, 739 (1970), " '[a]ppellant may not now complain of the failure to suppress evidence which his own counsel elicited [on cross-examination] at trial.' " *Commonwealth v. Ransome*, 485 Pa. 490, 497, 402 A.2d 1379, 1383 (1979) (quoting *Commonwealth v. Brown*, 462 Pa. 578, 589, 342 A.2d 84, 89 (1975)) (evidence of uncounseled line-up).

Appellant also argues that the identifications and statements should have been suppressed as the fruits of the allegedly illegal arrest, one-on-one confrontation, and/or photographic display. Finding no defect in those procedures, we need not address that issue.