109 Cal.Rptr.2d 554 (2001)
90 Cal.App.4th 1282
The PEOPLE, Plaintiff and Respondent,
v.
Marvin Lee ASHBURN, Defendant and Appellant.
No. C036029.
Court of Appeal, Third District.
July 25, 2001.
Review Granted October 17, 2001.
*555 Peter Dodd, under appointment by the Court of Appeal, for Defendant and Appellant.
Bill Lockyer, Attorney General, David P. Druliner, Chief Assistant Attorney General, Robert R. Anderson, Senior Assistant Attorney General, J. Robert Jibson, Supervising Deputy Attorney General, Janine R. Busch, Deputy Attorney General, for Plaintiff and Respondent.
NICHOLSON, J.
After the trial court denied his motion to suppress evidence found in his car during an impound search, defendant Marvin Lee Ashburn pleaded guilty to transportation of methamphetamine. (Health & Saf. Code, § 11379, subd. (a).) The trial court sentenced defendant to two years in state prison. Defendant contends the police were not entitled to impound and search his car based on an incorrect California Department of Motor Vehicle (DMV) computer *556 record that reported his car's registration had been expired for more than eight months. The record was inaccurate because defendant had registered the car the day prior to the stop. We shall affirm.

FACTUAL AND PROCEDURAL BACKGROUND
At 11:24 a.m. on July 30, 1999, Redding Police Officers Kristen Fredrick and Roger Moore pulled over a gray Buick Regal driven by defendant for speeding and because its registration was expired. Before the officers pulled the car over, the police dispatcher had advised them that the vehicle's registration status was "non-op" and the registration had been expired for eight months.
Defendant told the officers that the registration on the car was current. Defendant claims he told the officers he had registered the car the day before. Officer Moore, however, did not recall the defendant telling him when he registered the car. To investigate defendant's claim, Officer Moore called dispatch two additional times. Both times, dispatch reported the registration was "paid non-op" valid from November 17,1998.
We interpret the designation "non-op" to mean the owner of the car paid a small fee and filed a certificate stating the car would not be operated on public roadways in such a manner as to require the car to be registered. (See Veh.Code, § 4604, subd. (a).) Because the Buick was being driven on a public roadway while it was on nonoperational status, the officers decided to impound the car.
There is conflicting evidence as to whether the defendant provided written proof of registration. Defendant testified he told Officer Moore the registration was in his glove compartment and Officer Moore got it out and looked at it. Defendant claimed Officer Moore stated "I don't care what you got, it's non-op...."
On the other hand, Officer Fredrick testified she asked the defendant for the registration. When asked if the defendant produced the registration, Officer Fredrick responded, "I don't recall seeing any registration paperwork." Further, Officer Fredrick testified, "I don't believe he had any with him that I can remember." Fredrick also stated defendant told her the registration was not in the car. Officer Moore said that he did not see any registration for the car.
Defendant and the current owner of the car both testified the current DMV sticker was on the license plate on July 30, 1999. Officer Fredrick testified she would have ignored the sticker on the license plate as those are often stolen. Officer Moore testified he looked at the license plate, but did not remember if it had a current registration sticker. Officer Moore relied on the computer information.
The computer information provided to the officers turned out to be incorrect. Defendant had registered the car on July 29, 1999, the day before the officers pulled him over.
An investigator from the DMV testified the information in the DMV database is entered by technicians at the local DMV offices. The technician's work is then reviewed and finally downloaded to the main database maintained by Teal Data Center. The investigator testified law enforcement accesses the DMV database via the California Law Enforcement Telecommunications System (CLETS).
During an inventory search of the car, the officers found more than 10 grams of methamphetamine in 13 individual Ziploc baggies, 5 to 10 grams of marijuana, a glass pipe, a cutting agent used as an additive for the sale of methamphetamine, *557 2 pagers, a hypodermic syringe, and various empty Ziploc baggies.
At the preliminary hearing, defendant moved to suppress the evidence found in his car. The court denied the suppression motion because it found that the "error" in the computerized information was caused by the DMV, not law enforcement. The court's ruling thus implicitly rejected defendant's claim he tendered a validated registration card to the officers.
Defendant pleaded guilty to transportation of methamphetamine. (Health & Saf. Code, § 11379, subd. (a).) The court sentenced defendant to two years in state prison. Defendant appeals the denial of his suppression motion.

DISCUSSION

I. DMV Record
Defendant asserts the "error" in the DMV records is chargeable to the Redding Police and, therefore, under Arizona v. Evans (1995) 514 U.S. 1, 14-17, 115 S.Ct. 1185, 1193-1194, 131 L.Ed.2d 34, 46-7 (Evans), the trial court should have suppressed evidence uncovered in the inventory search. Evans has no application here because there is no evidence of negligence or inadequate recordkeeping by anyone. It takes time to process paperwork. The officers acted reasonably by relying on the DMV record that was 100 percent accurate less than 28 hours prior to this stop. Defendant could have avoided this problem entirely by presenting a validated registration card to the officers.
In a proceeding under Penal Code section 1538.5 to suppress evidence, "... the power to judge the credibility of the witnesses, resolve any conflicts in the testimony, weigh the evidence and draw factual inferences, is vested in the trial court. On appeal all presumptions favor the exercise of that power, and the trial court's findings on such matters, whether express or implied, must be upheld if they are supported by substantial evidence." (People v. Lawler (1973) 9 Cal.3d 156, 160, 107 Cal.Rptr. 13, 507 P.2d 621.)
The exclusionary rule is a judicial remedy designed to deter law enforcement misconduct by prohibiting the admission at trial of evidence obtained during the unlawful search. (United States v. Leon (1984) 468 U.S. 897, 906, 104 S.Ct. 3405, 3411, 82 L.Ed.2d 677, 687-688 (Leon).) In Leon, the Supreme Court recognized an exception to the exclusionary rule "`to permit the introduction of evidence obtained in the reasonable good-faith belief that a search or seizure was in accord with the Fourth Amendment.' [Citation.]" (Id. at p. 909, 104 S.Ct. 3405.) The Leon court reasoned: "`If the purpose of the exclusionary rule is to deter unlawful police conduct, then evidence obtained from a search should be suppressed only if it can be said that the law enforcement officer had knowledge, or may properly be charged with knowledge, that the search was unconstitutional under the Fourth Amendment.' [Citations.] In short, where the officer's conduct is objectively reasonable, `excluding the evidence will not further the ends of the exclusionary rule in any appreciable way; for it is painfully apparent that ... the officer is acting as a reasonable officer would and should act in similar circumstances. Excluding the evidence can in no way affect his future conduct unless it is to make him less willing to do his duty.' [Citation.]" (468 U.S. at pp. 919-920, 104 S.Ct. 3405; accord, Evans, supra, 514 U.S. at p. 10, 115 S.Ct. 1185; see also People v. Downing (1995) 33 Cal. App.4th 1641, 1652-1653, 40 Cal.Rptr.2d 176 (Downing).)
In Evans, the Supreme Court extended the holding in Leon to searches and seizures performed in good faith reliance on *558 erroneous computer records prepared by court officials. (514 U.S. at pp. 15-16, 115 S.Ct. 1185.) The Supreme Court examined three factors in making this decision. First, the court noted the exclusionary rule "was historically designed `"to deter police misconduct rather than to punish the errors of judges and magistrates."' [Citations.]" (Id. at p. 11, 115 S.Ct. 1185.) Second, the court looked at whether there was any "`"evidence suggesting that judges and magistrates are inclined to ignore or subvert the Fourth Amendment or that lawlessness among these actors requires the application of the extreme sanction of exclusion."' [Citations.]" (Ibid.) Third, the court examined whether there was any "basis for believing that exclusion of evidence seized pursuant to a warrant would have a significant deterrent effect on the issuing judge or magistrate." (Ibid.) Based on these three factors, the Supreme Court recognized a "categorical exception to the exclusionary rule for clerical errors of court employees." (Id. at pp. 15-16, 115 S.Ct. 1185.) The error in the computer record existed for at least three weeks prior to defendant's arrest. (Id. at p. 4,115 S.Ct. 1185.)
In her concurring opinion, Justice O'Connor, joined by Justices Souter and Breyer, wrote: "While the police were innocent of the court employee's mistake, they may or may not have acted reasonably in their reliance on the recordkeeping system itself. Surely it would not be reasonable for the police to rely, say, on a recordkeeping system, their own or some other agency's, that has no mechanism to ensure its accuracy over time and that routinely leads to false arrests, even years after the probable cause for any such arrest has ceased to exist (if it ever existed)." (Evans, supra, 514 U.S. at pp. 16-17, 115 S.Ct. 1185, cone, opn., italics omitted.)
In Downing, the defendant was charged with a criminal offense based upon evidence seized in reliance on a computer record erroneously showing he was subject to a probation search. (33 Cal.App.4th at p. 1645, 40 Cal.Rptr.2d 176.) The Court of Appeal, Fourth Appellate District, Division One, reversed the trial court's grant of defendant's suppression motion because the computer records were generated solely by the judicial branch, not law enforcement. (Ibid.) The Downing court noted that if the error was based upon negligence or an error generated by the police department itself, then the court could not apply the Leon good faith exception. (Id. at p. 1654, fn. 19, 40 Cal.Rptr.2d 176.) The computer error in Downing was over a year old. (Id. at pp. 1645, 1646, 40 Cal.Rptr.2d 176.)
Downing relied on People v. Ramirez (1983) 34 Cal.3d 541, 543-544, 194 Cal. Rptr. 454, 668 P.2d 761, in which the police arrested the defendant based on a computer record that showed an active warrant that had been recalled six months prior to the date the defendant was arrested. Our Supreme Court held "an arrest based solely on a recalled warrant is made without probable cause. The fruits of a search incident to such an arrest must, then, be suppressed. Although in this case the arresting officer no doubt acted in good faith reliance on the information communicated to him through `official channels,' law enforcement officials are collectively responsible for keeping those channels free of outdated, incomplete, and inaccurate warrant information." (Id. at p. 552, 194 Cal. Rptr. 454, 668 P.2d 761.) The court concluded: "Here we decline only to validate an arrest made on the basis of data which a law enforcement agency knew or should have known were in error because of inadequate or negligent record-keeping." (Ibid., italics added.)
*559 Timing is a key factor in assessing whether the police have acted negligently or engaged in inadequate recordkeeping. "In the few cases in which arrests on erroneous warrant information have been sustained, the delay between the recall or cancellation of the warrant and the transmission of the `stale' information to the field has usually been extremely brief, often only a matter of days." (People v. Ramirez, supra, 34 Cal.3d at p. 549, 194 Cal.Rptr. 454, 668 P.2d 761, citing Commonwealth v. Riley (1981) 284 Pa.Super. 280, 425 A.2d 813 (Riley) and Childress v. United States (D.C.1977) 381 A.2d 614 (Childress).)
In Childress, the court validated an arrest made on a traffic warrant that had been satisfied four days earlier. "Administrative delays attendant to the operation of any metropolitan area police department resulted in failure to remove the satisfied warrants from the computerized `active' list before the officers received the radio dispatch on November 18 that the warrants were outstanding. This combination of reasonable administrative delay and reasonable police reliance on misinformation produced by such a delay presents a situation in which acceptance of appellants' position would do nothing to advance the purposes of the exclusionary rule. [Citation.]" (381 A.2d at pp. 617-618, fn. omitted.) The court held that that the four-day delay "does not rise to the level of police administrative negligence fatal to the government...." (Id. at p. 618, fn. 3.)
In Riley, the court rejected defendant's contention that his arrest "was unlawful because it was based upon inaccurate information from the NCIC computer...." (425 A.2d at p. 816.) The court concluded, "We agree with the court in Childress that police officers' reasonable reliance on computerized information only four days out of date can suffice to justify a warrantless arrest." (Ibid.)
We conclude a reasonably short time period between the event giving rise to the requirement for updating a computer record and an arrest does not require the suppression of evidence obtained in a search based on this "stale" record. Updated data must be entered into a computer by people, checked by people and then downloaded into the main computer database by people.
Here, the record provides no evidence of inadequacy or negligence on the part of DMV or the Redding Police Department. The "correct" information was less than 28 hours old.[1] That DMV did not update this computer record within 28 hours does not constitute inadequate or negligent recordkeeping. Further, this very limited delay does not establish law enforcement officials failed to keep their channels of communication free of outdated, incomplete or inaccurate information. The officers' reliance on the existing record was objectively reasonable and falls within the good faith exception to exclusion enunciated in Leon.[2]
*560 Defendant next argues the officers had actual notice the DMV computer record was an "error" based on his testimony that he provided them with a registration card. We disagree.
The trial court heard and saw the testimony of the officers and the defendant. The trial court chose to disbelieve the defendant's testimony that he tendered his registration card. This was within the trial court's discretion. (People v. Hunt (1985) 174 Cal.App.3d 95, 103, 219 Cal. Rptr. 731 [court not bound by uncontradicted statements of defendant]; People v. Fairbank (1997) 16 Cal.4th 1223, 1253-1255, 69 Cal.Rptr.2d 784, 947 P.2d 1321 [court is entitled to disbelieve defendant].) We will not second-guess the trial court's credibility determinations.
We also conclude the officers acted reasonably in determining to discredit defendant's contrary oral protestations and in suspecting the possible fraudulent presence of the sticker on his license plate. As they testified, registration stickers are often stolen. Peace officers are not required to accept as gospel statements from the people they stop to investigate.
Despite the spin defendant attempts to place on the officers' testimonythat they did not remember whether defendant produced proof of registrationthe record belies this contention. The officers testified they did not see a valid registration card when they asked defendant to produce it and defendant told Officer Fredrick he did not have the registration in his car. The trial court was entitled to credit their testimony and reject defendant's contrary statements.
Defendant's failure to provide the validated registration card to the officers contributed to the impounding of his car. Had he presented the card, the officers would not have been able to impound his car.
Defendant was required to carry his validated registration card in his car while operating it. (Veh.Code, § 4607.) This was vitally important in the days immediately following the re-registration of this car because the registration had been expired for over eight months.
Where the registration of a car driven on a public roadway has been expired for over six months, the Vehicle Code authorizes police officers to impound it. (Veh. Code, § 22651, subd. (o)(1).) Those same officers must, however, release the car if the owner proffers proof of registration and a valid driver's license. (Ibid.) Had defendant proffered proof of registration, the officers would not have been authorized to impound his car.
Defendant contends the registration of the Buick was not expired because it was reported to the officers as "paid non-op." Thus, the officers had no legal right to impound the car. (Veh.Code, § 22651, subd. (o)(1).) We disagree.
The certification that a car is non-operational applies only to cars for which the registration is not going to be renewed upon its expiration. "[P]rior to the expiration of the registration of a vehicle, if that registration is not to be renewed prior to *561 its expiration, the owner of the vehicle shall file, under penalty of perjury, a certification that the vehicle will not be operated, moved, or left standing upon any highway without first making an application for registration of the vehicle, including full payment of all fees. The certification is valid until the vehicle's registration is renewed pursuant to subdivision (c)." (Veh. Code, § 4604, subd. (a), italics added.) This provision presupposes non-operational vehicles subject to it will not be registered. If, in fact, the car is timely registered, there is no need to file a certificate of non-operation.
Here, the non-operational status had commenced in November 1998eight months before the stop. Thus, the report of "non-op" established the car was not registered. Further, Officer Fredrick testified the car's registration had been expired for eight months.
We conclude the officers' reliance on pertinent DMV computer information that was at most 28 hours "stale" was objectively reasonable. It takes time to input vast amounts of data into computers, which is daily accumulated by the DMV, to verify that data, and to enable practical access to and use of it by peace officers in the field in hundreds of jurisdictions throughout the state. The facts of this case establish no negligence or inadequate recordkeeping by DMV. Defendant's failure to carry a validated registration card and present it to the police when he was pulled over precluded credible on-site rebuttal to the presumptively correct information retrieved from the DMV computer and relied on by the officers. The trial court properly denied defendant's motion to suppress.

II. Health and Safety Code section 11372.5
The trial court failed to impose the $50 mandatory Health and Safety code section 11372.5 fee and the $50 in penalty assessments under Penal Code section 1464 and $35 in penalty assessments under Government Code section 76000, subdivision (a). These fees and assessments are mandatory. (People v. Martinez (1998) 65 Cal.App.4th 1511, 1519-1522, 77 Cal. Rptr.2d 492.) As a result, the omission of these fines and assessments is an unauthorized sentence that we must correct regardless of whether an objection or argument was raised in the trial court or in the reviewing court. (People v. Smith (2001) 24 Cal.4th 849, 854, 102 Cal.Rptr.2d 731, 14 P.3d 942.)[3]

DISPOSITION
The judgment is modified to impose a $50 criminal laboratory analysis fee (Health & Saf.Code, § 11372.5) and state and county penalty assessments of $50 and $35, respectively. As modified, the judgment is affirmed. The trial court is directed to amend the abstract of judgment to reflect these modifications, and to send a certified copy of the amended abstract of judgment to the Department of Corrections.
SCOTLAND, P.J., and MORRISON, J., concur.
NOTES
[1] The earliest defendant could have obtained his registration would have been 8 a.m. on Thursday morning, July 29. He was pulled over at 11:24 a.m. on Friday, July 30. It is more likely that the delay was less than 24 hours.
[2] We decline to decide the question of whether DMV is part of the law enforcement enterprise or a quasi-judicial entity akin to a court under Evans. Such inquiries have given rise to conflicting answers across the county. (Compare Shadier v. State (Fla.2000) 761 So.2d 279, 286 [Florida Department of Highway Safety is part of law enforcement such that its errors are imputed to police] with State v. Ewoldt (Iowa Ct.App.1989) 448 N.W.2d 676, 678 [erroneous information in Iowa Department of Transportation records is not imputed to police].) The ultimate conclusion as to whether the DMV is part of law enforcement or is more akin to the judiciary requires extensive factual evidence showing DMV's role in law enforcement efforts (see, e.g., Terry York Imports, Inc. v. Department of Motor Vehicles (1987) 197 Cal.App.3d 307, 314, 242 Cal.Rptr. 790 [DMV officials have peace officer status]) and its "quasi-judicial" role (see, e.g., Menge v. Reed (2000) 84 Cal. App.4th 1134, 1141, 101 Cal.Rptr.2d 443 [discussing DMV's quasi-adjudicatory function]; Wise v. Thrifty Payless, Inc. (2000) 83 Cal. App.4th 1296, 1303, 100 Cal.Rptr.2d 437 [DMV proceedings connected with the revocation of a license are "quasi-judicial"]). The parties have not provided sufficient factual evidence or legal analysis to the trial court or to this court for us to consider or resolve the matter.
[3] In the interest of judicial economy, we correct these unauthorized omissions without having requested supplemental briefing. A party claiming to be aggrieved by this procedure may petition for rehearing. (Gov.Code, § 68081.)