J-A03018-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| DIO GARCIA | : | No. 1640 EDA 2024 |

Appeal from the Order Entered May 10, 2024
In the Court of Common Pleas of Bucks County Criminal Division at
No(s): CP-09-CR-0001892-2023

BEFORE:  STABILE, J., McLAUGHLIN, J., and LANE, J.

MEMORANDUM BY McLAUGHLIN, J.:				**FILED JUNE 11, 2025**

The Commonwealth appeals from the order granting Dio Garcia's motion to suppress. It maintains that officers had probable cause to arrest Garcia, an independent source justified the arrest and search of his vehicle, and that prior stipulations did not preclude the court from crediting subsequent testimony. We reverse.

The Commonwealth charged Garcia with possession of a firearm prohibited, firearms not to be carried without a license, receiving stolen property, two counts of possession of marijuana, and use of drug paraphernalia.[1] Garcia's charges stemmed from a traffic stop conducted in Bucks County on March 14, 2023. The court scheduled an evidentiary hearing on pretrial motions on October 17, 2023. Before the hearing, counsel

_____

[1] 18 Pa.C.S.A. §§ 6105(a)(1), 6106(a)(1), 3925(a), and 35 P.S. §§ 780-113(a)(31)(i), (32), respectively.

subpoenaed the Bensalem Police Department's custodian of records and the arresting officer in Garcia's case, Officer Raymond Hartman. Counsel also requested radio room records, Officer Hartman's cell phone records, and the department's dashcam storage policy. The subpoena indicated that if the requested records were provided in advance, the custodian and Officer Hartman would not be required to appear at the October 17 hearing. The department ultimately only provided the dashcam storage policy. The Commonwealth then filed a motion to quash the subpoena.

At the October 17 hearing, the Commonwealth and defense stipulated to the testimony of three officers, Detective Cappo and Detective Moulder of the Philadelphia Northeast Detectives, and Officer Hartman of the Bensalem Police. *See* N.T. Stipulation/PreTrial Motions ("October Hearing"), 10/17/23. The parties stipulated as follows:

> [ADA]: And, first, if we could start with some stipulations that the Commonwealth and the defense counsel has [sic] had.
>
> The Court: Okay.
>
> [ADA]: And, Your Honor, there's a stipulation that if Detective Cappo of the Northeast Detectives in Philadelphia was called to testify today, he would testify that back on March 14, 2023 he was not working that day and he was not contacted or spoke directly with Bensalem Dispatch or Detective Moulder. And then thereafter Northeast Detectives being contacted by Bensalem, that's when he was called in by his lieutenant on his off day to follow up on the case.
>
> [Defense counsel]: And also he had no contact with Officer Hartman that day as well.

[ADA]: Yes, Your Honor.

The Court: Okay. So it's stipulated by both counsel?

[Defense counsel]: Yes, Your Honor.

[ADA]: So stipulated.

The Court: All Right. Very well.

[ADA]: As well as on Detective Moulder, M O U L D E R, Northeast Philadelphia Detectives, he was working that day back on March 14th, 2023 at which time he was – he spoke with Officer Hartman of the Bensalem Township Police, and the extent of Detective Moulder's involvement is that he checked the – I guess their NCIC[2] or PICS[3] system and then removed [Garcia's] vehicle from the system at that time. At the time of that contact with Bensalem there was not a signed judge warrant for the vehicle nor a signed judge warrant for the defendant Dio Garcia.

[Defense counsel]: And also he indicated, and it would also be stipulated that he did not relay any information to Officer Hartman about the case other than to say the vehicle was in the system.

[ADA]: So stipulated.

The Court: So stipulated. By both counsel, correct?

[Defense counsel]: Yes, Your Honor.

The Court: Okay.

[ADA]: As well as, Your Honor, there is a stipulation by and between counsel as far as on – if Officer Hartman of Bensalem Township Police was called to testify, during the traffic stop at issue on March 14th, 2023 the only phone calls that were made during that time were to Bensalem Dispatch

_____

[2] NCIC is an acronym for the National Crime Information Center. **_See Commonwealth v. Riley_**, 425 A.2d 813, 814 (Pa.Super. 1981).

[3] Apparently referring to the Pennsylvania Instant Check System. **_See Navarro v. Pa. State Police_**, 212 A.3d 26, 45 (Pa. 2019).

- 3 -

and to Northeast Detectives – Northeast Philadelphia Detectives.

[Defense counsel]: Yes, stipulated, Your Honor.

*Id.* at 2-4. Regarding the stipulations for Officer Hartman, the Commonwealth maintained that it resolved counsel's subpoena request for his cell phone records. The custodian of records was also present at the hearing and addressed counsel's requests. The court determined that the Bensalem Police Department fully complied with the subpoena.

At a subsequent hearing on pretrial motions, on January 23, 2024, Garcia moved to suppress any statements made by him and any evidence recovered from his vehicle. He argued that officers lacked probable cause for the traffic stop, unlawfully detained him without reasonable suspicion or probable cause, and conducted an illegal search without a warrant. Garcia maintained that although officers claimed to have conducted an inventory search of the vehicle, the search was illegal and exceeded the scope of a legal inventory search.

The Commonwealth presented testimony from Detective Cappo and Officer Hartman. Detective Cappo's testimony as to March 14 resembled the parties' earlier stipulation of his testimony. He further testified that he had been assigned to investigate a March 8 robbery in Philadelphia, where the complainant identified Garcia as the perpetrator. *See* N.T., Pretrial Motions Hearing, 1/23/24 at 11-13. The complainant told Detective Cappo that Garcia had a gun during the robbery and described Garcia's vehicle. *Id.* at 12-13.

The complainant did not tell Detective Cappo that Garcia used the vehicle during the robbery.

Detective Cappo testified that based on this information, on March 11, 2023, he added Garcia's vehicle to the NCIC database. *Id.* at 15-16. The NCIC entry included alerts such as "occupant(s) armed," "used in pt of gun robbery," and "contact northeast detectives." Commonwealth's Exhibit 1 ("NCIC Report"). Detective Cappo also testified that he submitted an arrest warrant for Garcia on March 11, three days before Garcia's traffic stop. N.T., Pretrial Hearing, at 19-20. However, the magistrate did not sign the warrant until after 5 p.m., on the day of Garcia's arrest. *Id.* at 21-24.

Detective Cappo confirmed that information in Philadelphia's "HIT" messaging system corresponded to the NCIC entry and would be accessible to any officer running Garcia's license plate. *Id.* at 29-30. He further testified that he did not speak with Officer Hartman, Bensalem dispatch, or Detective Moulder. *Id.* at 47, 54.

Detective Cappo explained the HIT system as follows:

> So when anybody comes in contact with any subject, as either wanted or a vehicle that is wanted, the officer that -- or whoever made contact with that vehicle sends a hit response to us clarifying that person is still wanted. We get it sent into our queue. We can either confirm it or deny it, in which case it was confirmed and it was sent back. And this is all done through the system, saying, yes, this subject is wanted or this vehicle is wanted. And then, you know, whatever the case, whatever the instructions are from there.

*Id.* at 28. For Garcia, the HIT report included the following: "[T]ake the owner/driver into custody as the pending warrant is a felony. A draft of the submitted affidavit will be faxed to you. The affidavit has been sent to the Philly DA charging unit for review/approval." *Id.* at 34; Commonwealth's Exhibit 3 (HIT Report).

Officer Hartman testified that while on patrol in Bensalem, he observed Garcia's vehicle with a rear brake light out. *Id.* at 63. He initiated a traffic stop of the vehicle, relayed the license plate number over his police radio, and was informed "that it was a felony vehicle." *Id.* at 70-72. He also testified that he was aware of the NCIC report indicating the vehicle may have "occupants armed on a gun robbery" and labeled as "a felony vehicle." *Id.* at 75. He did not mention the HIT report information.

Upon approaching the vehicle, Officer Hartman encountered Garcia in the driver's seat. During a check of Garcia's information, Officer Hartman's police data terminal displayed that Garcia was wanted for a probation violation in Florida. *Id.* at 132. However, the system stated "in-state pickup only for Florida." *Id.* at 73, 75, 79. Officer Hartman did not contact Florida to check on the status of Garcia's probation violation. *Id.* at 133. Nevertheless, based on the probation violation, Officer Hartman detained Garcia and took him into custody. *Id.* at 74-75, 132.

Throughout the stop, Officer Hartman remained in contact with April from Bensalem Dispatch, who initially told him that Northeast Detectives wanted the vehicle but later changed their mind and said they "didn't want

anything anymore." *Id.* at 84-85. Officer Hartman testified that he then called Northeast Detectives and spoke with Detective Moulder. *Id.* at 85-87. He testified that Detective Moulder gave him details about Garcia's robbery case and told him to arrest Garcia. *Id.* at 87. Officer Hartman then gave Detective Moulder the fax number to Bensalem police dispatch headquarters to fax over the Philadelphia arrest warrant for Garcia and arrested Garcia. *Id.* at 90.

Following the arrest, Officer Hartman conducted an inventory search of the vehicle, since the vehicle had to be towed per Bensalem police policy. *Id.* at 97-99. During the search, he found a gun in the back seat. *Id.* at 104-05. At that time, he stopped his inventory search and seized the vehicle to obtain a search warrant which he co-drafted. *Id.* at 105, 108-09; Commonwealth Exhibit 8 (Search Warrant). Officer Hartman testified that Florida did not want Garcia and that he took Garcia into custody at the request of Detective Moulder. N.T., Pretrial Hearing, at 134, 138. Officer Hartman agreed that when he arrested Garcia, which was around 10:50 – 11:00 a.m., he did not have an arrest warrant at the time. *Id.* at 138. He testified that the arrest warrant from Philadelphia did not arrive until 5:39 pm. *Id.* Officer Hartman's testimony was corroborated by his body and dashcam footage, including his conversation with someone from Northeast Detectives. *See* Commonwealth's Exhibit 5 (Dash and Body Cam Footage).

Defense counsel objected to the officer's testimony as hearsay based on the October 17 hearing stipulations. Counsel also introduced the stipulations which the court admitted into evidence. *See* N.T., Pretrial Hearing, at 17-18,

92-93, 141; Defense Exhibit 3. The Commonwealth argued that the stipulation for Detective Moulder's testimony was "based on, you know, what Detective Moulder was relaying to us that day" and any inconsistencies between the stipulations and the motions testimony would be left up to the court to determine the weight of "potentially contradictory statements." N.T., Pretrial Hearing, at 93-94. The court explained that it would accept the previously made stipulations but that it was "not going to let people come into the courtroom, stipulate to what their testimony will be in a case, and then come in later and testify contrary to that stipulation." *Id.* at 95, 96.

The court granted the motion to suppress. Though it found Officer Hartman's testimony credible, it concluded that the stipulations negated his testimony. Based on the stipulations, the court determined that it was "constrained" to find that the Commonwealth failed to prove that Officer Hartman had probable cause to arrest Garcia. Decision, filed 5/9/24, at 6 (unpaginated). The Commonwealth filed a motion for reconsideration and the defense filed a response. The court denied the Commonwealth's motion and this timely appeal followed.

The Commonwealth raises the following questions:

> 1. Are the suppression court's findings of fact [] not supported by the record where the suppression court found that a prior stipulation of proffered testimony entered at a discovery hearing negated the credible testimony of Officer Hartman at the suppression hearing where that testimony was further corroborated by the incontrovertible video evidence?

2. Did the suppression court further err in finding that Officer Hartman did not have probable cause to arrest [Garcia] based on the information and directive he received from the Philadelphia Detectives Unit and on the basis of the NCIC "Hit" pursuant to the collective knowledge doctrine[?]

3. Did the suppression court again err in not finding that the Florida probation warrant, despite being marked as non-extraditable, constituted an independent source of the arrest of [Garcia] which would have resulted in the towing and inventory search of [Garcia's] vehicle such that the evidence would have inevitably been discovered[?]

Commonwealth's Br. at 4.

When reviewing the grant of a motion to suppress:

[W]e follow a clearly defined standard of review and consider only the evidence from the defendant's witnesses together with the evidence of the prosecution that, when read in the context of the entire record, remains uncontradicted. The suppression court's findings of fact bind an appellate court if the record supports those findings. The suppression court's conclusions of law, however, are not binding on an appellate court, whose duty is to determine if the suppression court properly applied the law to the facts.

Our standard of review is restricted to establishing whether the record supports the suppression court's factual findings; however, we maintain *de novo* review over the suppression court's legal conclusions.

***Commonwealth v. Korn***, 139 A.3d 249, 252-53 (Pa.Super. 2016) (citations omitted).

For its first issue, the Commonwealth claims that the stipulations were not "of fact" but representative of what the officers would have testified to at the October hearing if called. Commonwealth's Br. at 20. Since there was no stipulation of fact, the Commonwealth maintains that the court was not bound by the stipulations. It notes that Officer Hartman's testimony is supported by

the body cam footage and points out that the court found him credible. The Commonwealth argues that when the evidence presented at the suppression motion was contrary to the stipulation, the court had "exclusive authority to weigh the conflicting evidence and make a credibility determination." *Id.* at 22. Garcia counters that the stipulations were as to the facts and bound the trial court.

We agree with the Commonwealth. "A stipulation is a declaration that the fact agreed upon is proven [, and a] valid stipulation must be enforced according to its terms." ***Commonwealth v. Mitchell***, 902 A.2d 430, 460 (Pa. 2006) (citation omitted). Here, although the stipulations were not artfully phrased, the only "fact" to which the parties stipulated was that the officers would give certain testimony if they were called to testify. There was no stipulation to the underlying facts, and a mere stipulation to testimony does not entail a concession of the underlying facts. ***See Commonwealth v. Smith***, 17 A.3d 873, 910 (Pa. 2011) (noting distinction). The stipulations here therefore did not bind the trial court as to the underlying facts, and it was free to make its own credibility determinations.

The trial court therefore erred in concluding that, as a matter of law, the stipulations overrode its determination that Officer Hartman's suppression testimony was credible. In another case, this Court might be inclined to remand for the suppression judge to make a credibility determination in the first instance. Here, we see no need for a remand because the lower court already determined that Officer Hartman was credible.

- 10 -

Next, the Commonwealth argues that the trial court erred in concluding that Officer Hartman did not have probable cause to arrest Garcia. It claims that Officer Hartman had probable cause based on his conversation with Detective Moulder and the NCIC report pursuant to the collective knowledge doctrine. The Commonwealth argues that firsthand knowledge is not needed for probable cause to arrest where the arresting officer has been:

> (1) ordered or directed to perform the arrest by an officer in possession of facts justifying the arrest; (2) received information justifying arrest; or (3) heard information which, coupled with facts he personally observed, provided probable cause to arrest.

Commonwealth's Br. at 27 (quoting **Commonwealth v. Reddix**, 513 A.2d 1041, 1043 (Pa.Super. 1986)). Based on the collective knowledge doctrine, the Commonwealth claims that Officer Hartman could lawfully arrest Garcia considering "Detective Cappo's investigation which accumulated probable cause to arrest [Garcia] for the armed robbery." **Id.** at 29. It further claims that it is irrelevant whether the arrest warrant was approved at the time of Garcia's arrest, or which specific detective directed Officer Hartman to arrest Garcia.

In Pennsylvania, the collective knowledge doctrine allows "an officer with the requisite level of suspicion [to] direct another officer to act in his or her stead." **Commonwealth v. Yong**, 177 A.3d 876, 889 (Pa. 2018). If "the arresting officer does not have the requisite knowledge and was not directed to so act," the officer may still seize the individual if "the investigating officer with probable cause or reasonable suspicion was working with the [arresting]

- 11 -

officer and would have inevitably and imminently ordered that the seizure be effectuated." *Id.* at 890.

There is probable cause for a warrantless arrest when the facts and circumstances and reasonably trustworthy information within the knowledge of the officer at the time of the arrest "are sufficient to warrant a man of reasonable caution in the belief that the suspect has committed or is committing a crime." *Commonwealth v. Snowden*, 330 A.3d 422, 431 (Pa.Super. 2025) (*en banc*) (citation omitted). A warrantless arrest that establishes that "police have probable cause to believe (1) that a felony has been committed and (2) that the person to be arrested is the felon," will be upheld. *Commonwealth v. Evans*, 494 A.2d 383, 388 (Pa.Super. 1985) (citation omitted). The determination of whether probable cause exists is based on the totality of the circumstances and requires only a probable showing of criminal activity. *See Snowden*, 330 A.3d at 431.

"[I]nformation contained in a[n] N.C.I.C . report is so inherently reliable that such information is, in and of itself, sufficient to form the basis of a finding of probable cause for a police officer who receives such information from an N.C.I.C. report to make an on the spot arrest." *Commonwealth v. Bumbarger*, 231 A.3d 10, 16 (Pa.Super. 2020) (citation omitted).

We again agree with the Commonwealth. We conclude that, pursuant to the collective knowledge doctrine, Officer Hartman had probable cause based on his conversation with Detective Moulder and his knowledge of the NCIC

report. Given our disposition of the first two issues, we do not address the third.

Order reversed. Case remanded. Jurisdiction relinquished.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/11/2025